IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHELLY SHEVLIN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:18-CV-02076-NJR-RJD ) |
| BRUCE RAUNER, RANDALL BLANKENHORN, BRUCE HARMENING, and MATT MAGALIS, | ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion to Dismiss filed by Defendants Randall Blackenhorn, Bruce Harmening, Matt Magalis, and Bruce Rauner (collectively "Defendants") (Doc. 10). For the reasons set forth below, the motion is granted in part and denied in part.

FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Shelly Shevlin began working for the Illinois Department of Transportation ("IDOT") in February 2008 as a human resources manager (Doc. 1, Ex. 1, p. 3). At the time Shevlin was hired, and until 2014, the Governor of the State of Illinois was a member of the Democratic Party (*Id.* at p. 1). In November 2014, Defendant Rauner, a member of the Republican Party, was elected Governor of the State of Illinois (*Id.*). Rauner allegedly expressed unfavorable opinions about individuals who support the Democratic party (*Id.*).

On September 20, 2016, Shevlin was terminated from her employment with IDOT

for conducting an interview while having a conflict of interest, and violating standards of professionalism and ethics (*Id.* at p. 4). Shevlin alleges Defendant Harmening, the IDOT's Bureau Chief/Investigations and Compliance Chief, made false statements to the Office of Executive Inspector General and fabricated the claims against her (*Id.*). Shevlin contends she was actually terminated because she was employed by prior Democratic administrations, and she refused to affiliate with the Rauner Administration (*Id.* at p. 5).

On September 17, 2018, Shevlin filed this one-count Complaint in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois (*See* Doc. 1). She alleges she was wrongfully terminated, in violation of her state and federal constitutional rights to free speech, free association, and due process (*Id.*). Shevlin names Defendants in their individual capacities for compensatory damages, and in their official capacities for injunctive and declaratory relief (*Id.*).

On November 14, 2018, Defendants removed the case to this Court (*Id.*). The Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. On December 14, 2018, Defendants filed a motion to dismiss arguing, *inter alia*, the Complaint fails to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) (Doc. 10). Shevlin timely opposed the motion (Doc. 11).

## DISCUSSION

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case or decide whether a plaintiff will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule

12(b)(6) motion to dismiss, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

As an initial matter, the Court is weary to recognize a private cause of action for Shevlin's claims under the Illinois Constitution. *See White v. Madison County, Ill.*, 2008 WL 539230, at *6 (S.D. Ill. Feb. 26, 2008) ("[W]hite has not pointed to, nor has the Court been able to discover through independent research, any private right of action or express remedy under the Illinois Constitution."); *Velazquez v. Williams*, 2015 WL 4036157, at *3 (N.D. Ill. June 30, 2015) (refusing to recognize an independent cause of action under the Illinois Constitution); *Bonnstetter v. City of Chicago*, 2014 WL 3687539, at *6 (N.D. Ill. July 24, 2014) ("There is no private cause of action for violations of art. 1, § 2 of the Illinois Constitution against employers who commit civil rights violations."). Moreover, "where state common law or federal law provides an adequate remedy to a plaintiff . . . a plaintiff may not maintain an independent cause of action under the Illinois Constitution." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 862 (N.D. Ill. Feb. 9, 2010) (and cases cited therein). Here, Shevlin brings her federal claims under 42 U.S.C. §1983, which provides an adequate remedy for any violations of her rights under the Illinois Constitution. *Id.* Accordingly, Shevlin's Illinois Constitutional claims are dismissed with prejudice.

Shevlin also alleges wrongful discharge based on political patronage, in violation of the First and Fourteenth Amendments of the United States Constitution. To proceed with this claim, she must show she engaged in political activity by affiliating or not affiliating with a particular politician or party, and that Defendants caused her to be fired because of her affiliation. *Fitzpatrick v. Reinhart, et al.*, 2010 WL 4683613, at *5 (C.D. Ill. Nov. 10, 2010) (citing *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004)).

The Complaint alleges Shevlin refused to support the Rauner Administration, so Defendant Harmening made false accusations against her and eventually terminated her from her position (Doc. 1, Ex. 1, p. 4). While these allegations are sufficient to state a claim against Harmening, the Complaint contains virtually no factual allegations against the remaining Defendants. Shevlin alleges that Defendant Rauner was the Governor of Illinois and made disparaging remarks against the Democratic party (*Id.* at p. 1). Shevlin states that Defendant Blackenhorn is the Secretary of Transportation of the State of Illinois and that Defendant Magalis is the Chief of State for the IDOT (*Id.* at p. 2). The Complaint further provides, "As a consequence of one or more of the foregoing acts of the Defendants, Plaintiff has lost her employment" (*Id.* at p. 4). Additionally, the Complaint states Defendants willfully and deliberately "deprive[d] Plaintiff of her employment in retaliation for not being supporters of Governor Rauner and the Republican party" (*Id.* at p. 5).

These conclusory allegations against Defendants Blackenhorn, Magalis, and Rauner fall short of the federal pleading standard. At a minimum, the Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Complaint, here, does not allege Blackenhorn, Magalis, or Rauner took any action to cause Shevlin's termination. Nor does she allege these Defendants had any personal knowledge of, or involvement in, her termination, such that liability could be imputed to them in their supervisory capacities. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise."). The Complaint's conclusory allegations against these Defendants are simply not enough to survive a motion to dismiss. Even when drawing all possible inferences in favor of Shevlin, the Complaint does not plausibly allege a claim against Blackenhorn, Magalis, or Rauner. Shevlin's claims against Blackenhorn, Magalis, and Rauner, in their individual capacities, are dismissed without prejudice and with leave to amend.

Defendants also argue the Complaint fails to state a claim because political affiliation is a valid qualification of the IDOT position from which Shevlin was terminated. In *Elrod v. Burns* and *Branti v. Finkel*, the Supreme Court recognized that the First Amendment generally protects public employees from being terminated for their political beliefs. 427 U.S. 347, 359 (1976); 445 U.S. 507, 515-16 (1980). However, the Court held that employers may dismiss individuals based on political affiliation, if political loyalty is a valid job qualification. *Elrod*, 427 U.S. at 367; *Branti*, 445 U.S. at 517-18. "And so emerged the so-called *Elrod-Branti* exception to political patronage dismissals." *Bogart v. Vermilion County, Ill.*, 909 F.3d 210, 213 (7th Cir. 2018).

The overarching inquiry in determining the application of the *Elrod-Branti*

exception is whether the employer can establish that "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. "[T]his could be either because the job involves the making of policy and thus the exercise of political judgment or the provision of political advice to the elected superior, or because it is a job (such as speechwriting) that gives the holder access to his political superiors' confidential, politically sensitive thoughts." *Riley v. Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005).

The Seventh Circuit has noted that determining whether a job fits within the *Elrod-Branti* exception can create "excessive litigation in the turnover between opposing political administrations" and "encourage incumbent public employees to protect their jobs by simply neglecting particular responsibilities." *Bogart*, 909 F.3d at 213 (citing *Allen v. Martin*, 460 F.3d 939, 944 (7th Cir. 2006)) (internal quotations and alterations omitted). To deter these risks, "we focus on the inherent powers of the office as presented in the official job description, while also looking at how the description was created and when, and how often, it was updated." *Id.* "[U]nless the plaintiff demonstrates that the job description bears some systematic unreliability or has been manipulated in some manner by officials looking to expand their political power, our examination begins and ends there." *Id.* at 213-14.

Shevlin's official title at the IDOT was "Human Resources Manager – Technical V" (Doc. 1, Ex. 1, p. 3). The IDOT's description for a "Human Resources Manager" provides the following,

- "This position . . . exercises discretion to ensure utilization of resources to accomplish district goals."

- "The greatest challenge is to ensure consistent application of policies/practices to personnel issues."

- "The incumbent is personally responsible for implementing and administering fair/consistent personnel policies and practices for the district. As a principal policy administrator, the incumbent maintains, interprets and implements personnel rules, policies and procedures. S/he recommends revisions of policy and attends meetings involving policy issues."

- "This position administers salary guidelines . . ."

- "This position is given broad latitude and discretion in administering all personnel functions."

- "Internal contacts include employees at all levels throughout the district for the purpose of providing policy/contract interpretations . . ."

(Doc. 10, Ex. 1).

Defendants argue the job title clearly demonstrates Shevlin held a policy-making position. But Shevlin argues the job description does not indicate she was a high-level policy maker, so application of the *Elrod-Branti* exception is inappropriate. Shevlin sets forth a document entitled "Pre-Disciplinary Hearing," which appears to be the notice of the hearing that preceded her termination (Doc. 11, p. 7). The notice states, "Read Non-union, *Rutan* covered, Pre-D language" (*Id.*). "*Rutan* covered" indicates any employment decision cannot be based on political affiliation, as indicated in the Supreme Court case *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). Following *Rutan*, Illinois began categorizing state jobs as "*Rutan* covered" where it was appropriate to "prohibit consideration of political affiliation or support (or lack thereof) in connection with hiring, promotion, transfer, or recall from layoff, with respect to employment positions covered by the Rutan decision." ILL. ADMIN. ORDER (2009),

https://www2.illinois.gov/Pages/government/execorders/AdministrativeOrder-2009-2.aspx.

Although the Court may take "judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment," the parties' briefing demonstrates that the *Elrod-Branti* inquiry is far too fact-specific to resolve at the pleadings stage. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994). "[T]he ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518. Accordingly, the Court declines to address the *Elrod-Branti* exception at this stage of the litigation. The issue would be better suited for a motion for summary judgment.

## Conclusion

For the reasons set forth above, Shevlin's claims under the Illinois Constitution are **DISMISSED with prejudice**. Shevlin's Section 1983 claims against Defendants Blackenhorn, Magalis, and Rauner, in their individual capacities, are **DISMISSED without prejudice and with leave to amend**. Shevlin **SHALL** file an amended complaint on or before **March 15, 2019**.

**IT IS SO ORDERED.**

DATED:   March 1, 2019

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**